SELECT REHAB, INC., Plaintiff,

v.

UNITED STATES of America,
Defendant.

No. 3:CV01–1278.

United States District Court,
M.D. Pennsylvania.

April 8, 2002.

Jeffrey Cooper, Mesirov Gelman Jaffe Cramer & Jamieson, Philadelphia, PA, Alexander S. Helderman, Schnader Harrison Segal & Lewis LLP, Philadelphia, PA, Carter H. Dukes, Huckaby Scott & Dukes PC, Birmingham, AL, Jeffrey Cooper, Schnader Harrison Segal & Lewis, Philadelphia, PA, for plaintiff.

Herbert H. Henry, III, U.S. Attorney's Office, Birmingham, AL, Michael N. Wilcove, Washington, DC, for defendant.

## MEMORANDUM

CAPUTO, District Judge.

Plaintiff, Select Rehab, Inc., filed the present action seeking a refund of taxes paid when Defendant determined that Plaintiff's medical directors were employees rather than independent contractors for purposes of federal employment tax liability.

Presently before the Court is Plaintiff's motion for summary judgment. (Doc. 4.) The motion has been fully briefed and is ripe for disposition. Because I find that Plaintiff acted reasonably and in good faith in making the decision to treat the physicians as independent contractors, Plaintiff's motion for summary judgment will be granted.

## BACKGROUND

Plaintiff, a subsidiary of Continental Medical Systems, Inc. (CMS),[1] provided a management team to rehabilitation units in acute care hospitals, (Marcus Dep., Doc. 22, Ex. 1 at 58–59), and contracted with physicians and therapists to serve as a medical directors and program directors. (Welsh Dep., Doc. 11, Ex. 3 at 11–12.)

Plaintiff treated these physicians as independent contractors for employment tax purposes, and did not pay any federal employment or unemployment tax with respect to their compensation. (LaMonna Decl., Doc. 22. Ex. 11 at ¶¶ 3–4.)

Plaintiff was audited by the Internal Revenue Service (IRS) for the years 1992, 1993, 1994, and 1995. At that time, the IRS determined that the physicians should have been treated as employees rather than as independent contractors for employment tax purposes. (*Id.*) Accordingly, Plaintiff was assessed additional employment and unemployment taxes (and failure to deposit penalties). Plaintiff unsuccessfully appealed, and ultimately filed fourteen (14) amended employment tax returns, paid a portion of the tax due, and filed a claim for a refund and request for abatement for each of the amended returns. After waiting the mandatory six (6) month period without action by the IRS, Plaintiff filed the instant action seeking a refund of the $7,644.20 paid for the employment taxes based on Defendant's assessment that the physicians were independent contractors. Defendant filed a counterclaim seeking $638,926.13, the total amount of the assessment. Plaintiff now moves for summary judgment.[2]

## STANDARD OF REVIEW

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is enti-

---

1.  Plaintiff is now a subsidiary of HealthSouth Corporation.

2.  The parties agree that issues of fact exist which preclude summary judgment with respect to the therapists. (Docs. 21 at 3; 25 at 2, n. 1.) Therefore, Plaintiff's motion for summary judgment only concerns the physicians, not the therapists.

tled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A disputed fact is material if proof of its existence or non-existence might affect the outcome of the suit under the applicable substantive law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law. Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one. *See id.* at 248, 106 S.Ct. 2505. An issue of material fact is genuine if a reasonable jury could return a verdict for the nonmoving party under the governing standard. *See id.* at 248–53, 106 S.Ct. 2505.

Where there is a material fact in dispute, the moving party has the initial burden of proving that: 1) there is no genuine issue of material fact; and 2) she is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 329, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). The moving party may present its own evidence or, where the nonmoving party has the burden of proof, simply point out to the court that "the nonmoving party has failed to make a sufficient showing of an essential element of her case." *Id.* at 323, 106 S.Ct. 2548. All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to the nonmoving party. *See Colburn v. Upper Darby Township*, 838 F.2d 663, 666 (3d Cir.1988).

## DISCUSSION

The sole issue in this case is whether Plaintiff had a reasonable basis to classify the physicians as independent contractors rather than employees. Plaintiff argues that long-standing industry practice supports treating such physicians as independent contractors. In the alternative, Plaintiff argues that it is entitled to the safe harbor relief of § 530 of the Revenue Act of 1978. Defendant argues that other medical directors were treated as employees, and that Plaintiff's assertions of reliance on industry practice, advice of counsel, and states' prohibitions against corporations employing doctors are based on overbroad, generalized testimony.

### A.   § 530 of the Revenue Act of 1978

Section 530  of the Revenue Act of 1978 provides in relevant part:

(a) Termination of certain employment tax liability purpose for periods before 1980

(1) In General—If—

(A) for purposes of employment taxes, the taxpayer did not treat an individual as an employee for any period ending before January 1, 1980, and

(B) in the case of the periods after December 21, 1978, all Federal tax returns (including information returns) required to be filed by the taxpayer with respect to such individuals for such period are filed on a basis consistent with the taxpayer's treatment of such individual as not being an employee, then, for the purposes of applying such taxes for such period with respect to the taxpayer, the individual shall be deemed not to be an employee unless the taxpayer had no reasonable basis for not treating such individual as an employee.

Revenue Act of 1978, § 530, Pub.L. No. 95–600, Stat. 2763, 2885–86.

■ A taxpayer retaining a worker's services is not liable for a federal employment or unemployment tax if the taxpayer fits within the ambit of § 530 of the Reve-

nue Act of 1978. Plaintiff argues that regardless of whether the physicians were actually employees or independent contractors, it is entitled to the safe harbor provision of § 530 because it had a reasonable basis for treating the physicians as independent contractors. Defendant denies that Plaintiff had a reasonable basis for treating the physicians as independent contractors. The statute's safe harbor provision provides relief from liability for employers who misclassed their employees as independent contractors, but who are able to establish that, at the time that they classified their employees as independent contractors, there was a reasonable basis for doing so. The statute " 'protect[s] [taxpayers] who exercised good faith in determining whether their workers were employees or independent contractors.' " *Concerned Care, Inc. v. United States*, No, 95–1444, 1997 WL 759625 at *2 (E.D.Pa. 1997) (quoting *General Inv. Corp. v. United States*, 823 F.2d 337, 340 (9th Cir.1987)).

■ Therefore, even if the physicians should have been treated as employees rather than as independent contractors, Plaintiff may not be liable for past employment taxes. *See generally 303 West 42nd St. Enter., Inc. v. Internal Revenue Service*, 181 F.3d 272, 276 (2d Cir.1999); *Marlar, Inc. v. United States*, 151 F.3d 962, 965–66 (9th Cir.1998); *Ren–Lyn Corp. v. United States*, 968 F.Supp. 363, 366 (N.D.Ohio 1997). Section 530 "shields a taxpayer who pays others for services from employment tax liability if the taxpayer has consistently treated them as other-than-employees unless the taxpayer had no reasonable basis for doing so." *303 West 42nd St. Enterp. Inc.*, 181 F.3d at 274. The taxpayer must show that it relied upon those grounds, and that the reliance was reasonable. *Id.* at 277; *West Virginia Personnel Resources Inc. v. United States*, 1996 WL 679643 at *8

(S.D.W.Va.1996); *Marlar*, 151 F.3d at 966. "Section 530 is liberally construed in favor of the taxpayer, but Plaintiff has the burden of establishing that it meets the requirements of Section 530 by a preponderance of the evidence." *Springfield v. United States*, 88 F.3d 750, 753 (9th Cir. 1996).

■ In order to qualify for relief under § 530, Plaintiff must establish that: "(1) [Plaintiff] has not treated any individual as an employee who holds a substantially similar position as those classified as independent contractors (the [substantive] consistency requirement); (2) [Plaintiff] has filed all required federal tax returns on a basis consistent with [its] treatment of [the physicians] as ... independent contractor[s] (the reporting consistency requirement); and (3) [Plaintiff] had a reasonable basis for treating [the physicians] as ... independent contractor[s] [ (the reasonable basis requirement) ].' " *North Louisiana Rehabilitation Center, Inc. v. United States of America*, 179 F.Supp.2d 658 (W.D.La. 2001) (citing *Halfhill v. United States*, 927 F.Supp. 171, 175 (W.D.Pa.1996)).

1. *Substantive Consistency Requirement*

■ Plaintiff must demonstrate that it has not treated any individual holding a substantially similar position as an employee for purposes of employment taxes. Defendant argues that CMS did not act consistently in naming physicians as independent contractors or employees, and was often influenced by the physicians' wishes to be treated as independent contractors, (Welsh Dep., Doc. 22, Ex. 3 at 26; Misitano Dep., Doc. 26, Ex. 2 at 51), which creates a question of fact as to whether the physicians were classified based on a reasonable reliance.

Defendant cites two (2) occasions when physicians were treated as employees.

John Clark, M.D. was hired as a medical director at the Baton Rouge Rehabilitation Hospital, and was classified as an employee (Clark Dep., Doc. 22, Ex. 7 at 13, Rice Dep., Doc. 22, Ex. 4 at ex. 2) at Dr. Clark's request. (Misitano Dep., Doc. 22, Ex. 2 at 47.) Anthony F. Misitano, a CMS executive, signed Dr. Clark's contract, and approved treating him as an employee. (Misitano Dep., Doc. 22, Ex. 2 at 50–52.) Dr. Clark, unlike other physicians, had no private practice, and "his whole role was to get the [company] off the ground," while the other directors were just "giving . . . a couple hours a week in administrative advisory time" on the side of their "substantial private practices." (Welsh Dep., Doc. 26, Ex. 1 at 47.) Dr. Clark was hired to be more hands on and full-time than the medical directors were (*Id.*), spending thirty-five (35) hours a week attending to the tasks, rather than the twenty (20) hours otherwise mandated. (*See* Rice Dep., Doc. 22, Ex. 4 at 2–4, ex. 2.)

At Braintree Hospital, James Liljestrand, M.D., who was the medical director before CMS acquired the hospital, was also classified as an employee. (Liljestrand Dep., Dc. 22, Ex. 8 at 9 13, 20.) However, Dr. Liljestrand was an "acquisition," that is, already an employee when Plaintiff acquired the entity, and he was already very involved in the community. (Welsh Dep., Doc. 26, Ex. 1 at 49.) Dr. Liljestrand also did not have a private practice, his title was senior vice president of medical affairs and medical director, he was a full time medical director, and he reported to the CEO of the hospital. (Mi-

sitano Dep., Doc. 26, Ex. 2 at 53.) This differed from the other medical directors, who viewed themselves as autonomous and came and went as they pleased. (*Id.*)

There is no genuine issue of material fact as to whether Drs. Clark and Liljestrand had different responsibilities than the physicians who were classified as independent contractors. Their positions were not substantially similar to that of a medical director. They did not have private practices like the other physicians, they were required to work more hours and oversee the hospitals, and they did not have the same freedoms with regard to the job as the other medical directors. Thus, it was not inconsistent to treat Drs. Clark and Liljestrand differently then the other physicians by classifying them as employees rather than independent contractors.[3]

### 2. *Reporting Consistency Requirement*

█ Plaintiff must also illustrate that it has filed all required federal tax returns on a basis consistent with its treatment of the physicians as independent contractors. *See* § 530(a)(1)(B); *Halfhill v. United States*, 927 F.Supp. 171, 175 (W.D.Pa. 1996). This is not in dispute; Defendant admits that Plaintiff has filed all the required federal returns in a manner consistent with the taxpayer's treatment of the individual as an independent contractor, and has treated all workers holding substantially similar positions as independent contractors, as required by the Revenue Act of 1978, § 530(a)(1)(B) and § 530(a)(3). (Explanation of Items, Medical Directors, Doc. 11, Ex. 10 at 19–20; Doc. 11, Ex. 11

---

**3.** Plaintiff argues these two (2) physicians are physicians of other CMS subsidiaries, not employed in any capacity by Plaintiff. Each subsidiary is considered a taxpayer, and each is separately considered for § 530 relief. (*See* IRS Field Service Advice, Doc. 25, Ex. B.) Therefore, when considering whether Plaintiff always treated its employees as independent

contractors, only Plaintiff's physicians are considered, and not the physicians hired by other CMS subsidiaries. As I have already determined that Drs. Clark and Liljestrand had different responsibilities than other physicians, it is irrelevant whether these physicians are employed by Plaintiff or other subsidiaries.

at 17; CSP Settlement Memo, Doc. 11, Ex. 12 at 2; Def.'s Resp. To Pl.'s Req. For Admis., Doc. 11, Ex. 4 at ¶ 4.) The Court thus concludes that no genuine issue of material fact exists as to this requirement.

### 3. *Reasonable Basis Requirement*

■ Finally, Plaintiff must establish that it had a reasonable basis for treating the physicians as independent contractors. *See Critical Care Register Nursing, Inc. v. United States,* 776 F.Supp. 1025, 1027 (E.D.Pa.1991). This requirement has been broadly interpreted in favor of taxpayers. *See* H.R.Rep. No. 95–1748 (1978); *Critical Care Register Nursing,* 776 F.Supp. at 1027.

Section 530 provides that a taxpayer has a reasonable basis for not treating an individual as an employee by relying on any of the following:

> (A) judicial precedent, published rulings, technical advice with respect to the taxpayer, or a letter ruling to the taxpayer;
> (B) a past IRS audit of the taxpayer in which there was no assessment attributable to the treatment (for employment tax purposes) of the individual holding positions substantially similar to the position held by the individual; or (C) long standing recognized practice of a significant segment of the industry in which such individual was engaged.

§ 530(a)(2).

■ A taxpayer only needs to show that it has met one (1) reasonable basis for treating the individual as an independent contractor in order to qualify for relief under § 530. *Hospital Res. Personnel, Inc. v. United States,* 68 F.3d 421, 425 (11th Cir.1995).

Plaintiff argues that it had several reasons for treating the physicians as independent contractors, including: (1) both Plaintiff's and CMS's management and legal personnel of CMS provided contract review, relying upon their knowledge of the healthcare industry generally, in treating medical directors and program directors as independent contractors, (Marcus Aff., Doc. 11, Ex. 6 at ¶¶ 2–3; Marcus Dep., Doc. 11, Ex. 7 at 57, 71, 73, 79, 81; Ortenzio Dep., Doc. 11, Ex. 8 at 16–17, 34–36, 55, 60; Welsh Dep., Doc. 11, Ex. 3 at 12, 17, 41, 50–54); (2) independent contractor treatment was consistent with general industry practice, (Marcus Aff., Doc. 11, Ex. 6 at ¶¶ 2–3; Marcus Dep, Doc. 11, Ex. 7 at 57, 71, 73, 79, 81; Ortenzio Dep., Doc. 11, Ex. 8 at 16–17, 34–36, 55, 60; Welsh Dep., Doc. 11, Ex. 3 at 12–14, 17–19, 18–20, 41, 50–54); (3) reliance on advice of legal personnel from CMS (Marcus Dep., Doc. 11, Ex. 7 at 39–40, 43–44, 71–73) and advice of national and local counsel, in-house tax, and financial experts, (Welsh Dep., Doc. 11, Ex. 3 at 19–31), and on general knowledge of the IRS rulings, regulations, and decisions learned through counsel's research, participation in continuing education programs, conversations with general counsel of other major for profit rehabilitation companies, and review of those companies' medical director and program director contracts, (*Id.* at 17–19, 41–45, 50–54); (4) common law factors, including the fact that Plaintiff exercised little, if any, control over the means and manner by which the physicians performed contracted services, (Marcus Dep., Doc. 11, Ex. 7 at 76; Satow Dep., Doc. 11, Ex. 9 at 48, 50, 54); and (5) concerns about state laws restricting the corporate practice of medicine and strict compliance with the prohibition in the corporate practice of medicine. (Welsh Dep., Doc. 11, Ex. 3 at 22, 30–31.)

Defendant replies that Plaintiff cannot establish that it had a reasonable basis for treating the physicians as independent

contractors because: (1) Plaintiff cannot rely on generalized statements and its own practice in establishing reliance on the for-profit rehabilitation industry's general practice; (2) Plaintiff's asserted reliance on industry practice was not reasonable; (3) Plaintiff cannot establish that it reasonably relied on the advice of lawyers and accountants; and (4) the corporate practice of medicine does not provide a reasonable basis for treating the physicians as independent contractors.

■ Plaintiff can satisfy the reasonable basis requirement by establishing that it reasonably relied on the advice of an attorney in making the decision to treat the physicians as independent contractors. *See Queensgate Dental Family Practice, Inc. v. United States,* 1991 WL 260452 (M.D.Pa.1991); *Deja Vu Entm't Enterp. of Minn., Inc. v. United States,* 1 F.Supp.2d 964 (D.Minn.1998).

The decision to treat the physicians as independent contractors was made by CMS legal department. (Marcus Dep, Doc. 22, Ex. 1 at 38–41; Welsh Dep., Doc, 22, Ex. 3 at 21; Misitano Dep., Doc, 22, Ex, 2 at 61–62.) All of the contracts were reviewed and approved by legal personnel affiliated with CMS. Stephen G. Marcus, Plaintiff's president during the relevant time period, testified that Plaintiff relied in large part on the expertise and knowledge of the management of the rehabilitation units within acute care hospitals. (Marcus Dep., Doc. 11. Ex. 7 at 73, 79.) However, based on his own years of experience in the industry, he testified that physicians were always treated as independent contractors. (*Id.* at 57, 81.) Robert Ortenzio, co-founder and president of CMS, also testified that based on his knowledge of the industry and previous experience, such physicians were classified as independent contractors.

Deborah Myers Welsh, CMS's legal counsel, made the decision to classify the physicians based on her knowledge of the rehabilitation industry. (Welsh Dep., Doc. 11, Ex. 3 at 12–14.) She studied trade publications and kept up-to-date with new IRS revenue rulings, which "reinforced" her view that CMS was doing the right thing. (*Id.* at 50–51, 54.) Welsh also consulted outside counsel in drafting and approving the contracts, (*Id.* at 12), and discussed the general industry and practice with the general counsel of HCA, Health-South, and Humana, (*Id.* at 11–12), although she does not remember their names. (*Id.* at 51–52.) She further testified that it was the industry standard to treat the physicians as independent contractors, (*Id.* at 41), and after review of her competitors contracts, learned that Plaintiff's competitors also treated their physicians in an identical manner. (*Id.* at 17–20, 50–54; Marcus Dep., Doc. 11, Ex. 7 at 71, 73, 79.)

The contracts were then signed by Misitano. By the time that he saw the contracts, they had been "scrubbed by in-house and outside counsel" and he "felt confident that all appropriate issues were addressed." (Mistiano Dep, Doc. 26, Ex. 2 at 51.) Plaintiff understood that many states had restrictions on the employment of physicians, and believed it was necessary to treat the physicians as independent contractors to be consistent with state law. (Welsh Dep., Doc. 11, Ex. 3 at 22–26.) The local counsel's advice was used to ensure that the contracts were consistent with state law.

■ Defendant alleges that, since Plaintiff does not present evidence of the lawyer's advice given to Welsh, the research they undertook, or declaration about what local counsel was given about the operations of CMS. Defendant asserts that Plaintiff has merely presented over-

broad, generalized testimony, which is inadequate for grant summary judgment in Plaintiff's favor. However, Welsh's testimony is based on her understanding of industry practice and experience in the industry. (Welsh Dep., Doc. 11, Ex. 3 at 12–14.) Moreover, reliance on independent counsel is sufficient, as "the inquiry is simply whether a taxpayer's beliefs and decisions regarding his treatment of individuals as either employees or independent contractors were reasonable and made in good faith." *Queensgate*, 1991 WL 260452. Defendant has also failed to produce any evidence refuting Plaintiff's evidence that this was industry practice; Defendant has failed to provide even one (1) instance where similarly situated physicians were classified as employees. A plaintiff is not required to present statistical evidence to support their claim, especially in the absence of evidence to the contrary. In this situation, Plaintiff has presented evidence, notably the deposition testimony and affidavits of Welsh, Marcus, and Misitano.

This case is factually similar to *North Louisiana Rehab. Ctr., Inc.* where Judge James found that there was a reasonable basis for treating the medical directors as independent contractors, holding that, "there is no genuine issue of material fact that Plaintiff and CMS reasonably, and in good faith, relied on the advice of in-house and outside counsel in making the decision to treat the Physicians as independent contractors." *North Louisiana Rehab. Ctr., Inc.*, 179 F.Supp.2d at 669 (attached Doc. 27, Ex. A). The court noted that all medical and program directors retained by the plaintiff were treated as independent contractors, the plaintiff filed all required federal tax returns on a basis consistent with its treatment of the physicians as independent contractors, and the plaintiff and CMS reasonably and in good faith relied on the advice on in-house and outside counsel in making the decision to treat the physicians as independent contractors. (*Id.*) As Plaintiff has established reasonable reliance based on § 530, it is unnecessary to determine whether the physicians were independent contractors or employees under common law. Plaintiff has sufficiently proven that it had at least one (1) reasonable basis for treating the physicians as independent contractors to qualify for relief under § 530. *See Hospital Res. Personnel, Inc.*, 68 F.3d at 425.

## CONCLUSION

The Court finds that Plaintiff treated all medical and program directors as independent contracts, filed all required federal tax returns on a basis consistent with its treatment of the physicians as independent contractors, and Plaintiff had a reasonable basis for treating the physicians as independent contractors, acting on good faith, in reliance of the advice of in-house and outside counsel. Accordingly, Plaintiff's motion for summary judgment (Doc. 4) will be granted. Plaintiff's claim with respect to the therapists remains. Defendant's cross claim will be dismissed.

An appropriate order will follow.

## *ORDER*

**NOW** this 8 day of April 2002, **IT IS HEREBY ORDERED** that:

1. Plaintiff's motion for summary judgment (Doc. 4) is **GRANTED.**

2. Plaintiff's claim with respect to the therapists remains.

3. Defendant's cross claim will be **DISMISSED.**